Hovanes Margarian (SBN 246359)
hovanes@margarianlaw.com
Iveta Ovsepyan (SBN 27918)
iveta@margarianlaw.com
THE MARGARIAN LAW FIRM
801 North Brand Boulevard, Suite 210
Glendale, California 91203
Telephone Number: (818) 553-1000
Facsimile Number: (818) 553-1005

Val D. Hornstein (SBN 133726)
Val@HornsteinLaw.com
Matthew R. Harrison (SBN 267477)
MHarrison@HornsteinLaw.com
HORNSTEIN LAW
275 Battery St., Suite 1600
San Francisco, CA 94111
Telephone Number: (415) 454-1490
Facsimile Number: (415) 520-0414

Attorneys for Plaintiff,
KATHERINE A. WEINKAM

# SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| KATHERINE A. WEINKAM, an individual, on behalf of herself, as class representative for all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>vs.<br><br>AMERICA HONDA MOTOR CO., INC., a California Corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.:  3:17-cv-06524-JSC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. Breach of Express Warranty<br>2. Breach of Implied Warranty<br>3. Breach of Implied Warranty (Song-Beverly Consumer Warranty Act), Civil Code § 1790, *et seq.*;<br>4. Breach of Implied Warranty (Magnuson-Moss Warranty Act), 15 U. S. C. § 2301 *et seq.;*<br>5. Violation of the California Unfair Competition Act ("UCL"), Business and |

```
)         Professions Code § 17200, et seq.
)      6. Violation of the California Consumer
)         Legal Remedies Act ("CLRA"), Civil
)         Code § 1750 et seq.
)      7. Violation of the False Advertisement Law
)         ("FAL"), Business and Professions Code
)         § 17500, et seq.
)      8. Common Law Fraud
)      9. Intentional Misrepresentation
)     10. Negligent Misrepresentation
          11. Quasi Contract/Restitution
```

## FIRST AMENDED COMPLAINT

KATHERINE A. WEINKAM, an individual, brings this action on behalf of herself, and as class representative for all others similarly situated, and the general public, by and through Plaintiff's attorneys, with the First Amended Class Action Complaint for Damages and Equitable Relief against Defendants, AMERICA HONDA MOTOR CO., INC., a California Corporation; and DOES 1 through 100, inclusive, alleges and affirmatively states as follows:

## INTRODUCTION

1.      AMERICA HONDA MOTOR CO., INC. ("Honda" or "AHM") is the U.S. distributor of Honda branded goods, vehicles, their parts, accessories, and software.

2.      Over the years, AHM has engaged in a general advertising scheme regarding the safety and reliability of its vehicles. General advertisements and representations have contributed to forming a public perception that AHM's vehicles are safe and reliable. Specifically, the Honda Fit has earned a five-star overall safety rating from the National Highway Traffic Safety Association (NHTSA)[1], a Superior Front Crash Prevention rating from the Insurance Institute for Highway Safety (IIHS)[2], and was the winner of the 2017 Best Subcompact Car for the Money.[3] The Fit was named the #1 Subcompact Car in 2018

---

[1] https://www.nhtsa.gov/vehicle/2017/HONDA/FIT/5%252520HB/FWD
[2] http://www.iihs.org/iihs/ratings/vehicle/v/honda/fit-4-door-wagon/2018
[3] https://cars.usnews.com/cars-trucks/honda/fit/2017

-1-

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

by the U.S. News and World Report.[4] Similarly, the Honda HR-V has earned a five-star overall safety rating with the NHTSA[5] and was the winner of the 2017 Best Subcompact SUV for the Money and Best Subcompact SUV for Families.[6] Plaintiff shared this general perception and believed AHM's Honda vehicles to be generally safe and reliable.

3.      Since 2015 to present, AHM has distributed Honda Fit vehicles in the United States with its Drive-by-Wire throttle system ("Drive-by-Wire"). Drive-by-Wire is a system with no mechanical cable linkage between the accelerator pedal and the throttle valve of the engine. Rather, the input from the accelerator pedal to the throttle is accomplished via electronics. Since 2016 to present, AHM has also distributed Honda HR-V vehicles with the same Drive-by-Wire throttle system as the Honda Fit. (Both models referred to together as "Class Vehicles.)

4.      Per Defendant's statements, Drive-by-Wire can help optimize the engine response for the driving conditions and the driver's expectations, increasing the vehicle's drivability. To establish the current driving conditions, the system allegedly monitors pedal position, throttle valve opening position, vehicle speed, engine speed, and engine vacuum. However, the flaw in Drive-by-Wire is that it makes the vehicles prone to accelerate suddenly without the driver depressing the accelerator pedal. Specifically, the Engine Control Unit ("ECU") component of the Drive-by-Wire system in the Class Vehicles fails to properly interpret driver commands and as a result, sends a signal to the vehicle's throttle motor, causing the vehicle to accelerate on its own without command from the driver. Honda did not disclose this flaw.

5.      Plaintiff Katherine Weinkam relied on Honda's representations and omissions regarding the Drive-by-Wire system when she purchased a 2017 Honda HR-V, VIN# 3CZRU5H51HM702419, with Drive-by-Wire ("Subject Vehicle").

---

[4] https://cars.usnews.com/cars-trucks/honda/fit
[5] https://www.nhtsa.gov/vehicle/2017/HONDA/HR-V/SUV/AWD
[6] https://cars.usnews.com/cars-trucks/honda/hr-v/2017

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

6.      Soon thereafter, Plaintiff's vehicle suddenly accelerated with no warning and without the driver depressing the accelerator pedal ("Unintended Acceleration"). Upon information and belief, the Unintended Acceleration event was caused by a defective Engine Control Unit ("ECU") which failed to properly communicate with the vehicle's throttle motor and caused the Unintended Acceleration without Plaintiff depressing the accelerator pedal. Plaintiff's Unintended Acceleration event resulted in a collision and the total loss of her vehicle. Subsequently, Plaintiff discovered that the Subject Vehicle suffers from sudden an Unintended Acceleration defect.

7.      Upon information and belief, the Honda Fit and HR-V model vehicles which are the subject of this action contain a defective Engine Control Unit ("ECU"), which fails to properly interpret the driver's command and send the correct signal to the vehicle's throttle motor, causing the vehicle to accelerate without the acceleration pedal being depressed. The incorrect interpretation and signal sent by the ECU causes the Unintended Acceleration defect in the U.S. Honda Fit and HR-V model vehicles.

8.      U.S. Honda Fit and HR-V models equipped with Drive-by-Wire suffer from the same or a similar defect, causing them to drive in a dangerous manner.

9.      After Honda's refusal to compensate Plaintiff and others similarly situated for leasing or selling them the defective Class Vehicles, Plaintiff filed this action on behalf of herself and all others similarly situated to remedy the situation.

10.      Had Honda disclosed to Plaintiff, prior to Plaintiff's purchase, that the Class Vehicles suffer from one or more defects that cause Unintended Acceleration, Plaintiff would not have purchased the Subject Vehicle.

## JURISDICTION AND VENUE

11.      This is a class action lawsuit.

12.      This court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10.

13.      Venue is proper within this county because the acts, conduct, and events alleged herein occurred in California, including the City and County of San Francisco.

Plaintiff, a San Francisco resident, entered into the purchase contract for her Honda HR-V in San Francisco, CA, at San Francisco Honda. Defendant AHM also does business in the County of San Francisco.

## PARTIES

14.    Plaintiff, KATHERINE WEINKAM ("Plaintiff" or "Weinkam"), is and was at all times relevant herein an individual residing in San Francisco County, California, who purchased a 2017 Honda HR-V, equipped with Drive-by-Wire, from San Francisco Honda, in the State of California.

15.    Plaintiff appears in this action on behalf of herself, on behalf of all others similarly situated, and pursuant to Business and Professions Code §§ 17200 *et seq.* and 17500 *et seq.,* on behalf of the general public in her capacity as a private attorney general.

16.    AMERICAN HONDA MOTOR CO., INC. ("Honda" or "AHM"), is and was at all times relevant herein a California Corporation, licensed to do business and doing business throughout the State of California and the United States, with its principal place of business located at 1919 Torrance Boulevard, Torrance, CA 90501. Honda is engaged in the manufacture, sale, and distribution of motor vehicles and also markets, supplies, and warrants Honda automobiles to the public at large through a system of hundreds of authorized dealerships, including San Francisco Honda.

17.    Plaintiff is informed and believes, and based thereon alleges that Defendants DOES 1 through 100 are corporations, or are other business entities or organizations of a nature unknown to Plaintiff.

18.    Plaintiff is unaware of the true names of Defendants DOES 1 through 100. Plaintiff sues said defendants by said fictitious names, and will amend this Complaint when the true names and capacities are ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by the Court. Plaintiff is informed and believes that each of the fictitiously named defendants is in some manner responsible for the events and allegations set forth in this Complaint.

-4-

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

19.     Plaintiff is informed, believes, and based thereon alleges that at all relevant times, each Defendant was a developer, designer, manufacturer, distributor and lessor/seller of vehicles, was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiff is further informed and believes, and based thereon allege that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about said defective Drive-by-Wire, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants. As used in this Complaint, "Defendants" means "Defendants and each of them," and refers to the Defendants named in the particular cause of action in which the word appears and includes AHM, and DOES 1 through 100.

20.     At all times mentioned herein, each Defendant was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other Defendants.

21.     Plaintiff makes the allegations in this Complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading, and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

### BACKGROUND AS TO PLAINTIFF KATHERINE WEINKAM

22.     On or about October 17, 2016, Plaintiff purchased from San Francisco Honda, an authorized Honda dealer located in the City and County of San Francisco, a new 2017 Honda HR-V, equipped with the Drive-by-Wire, bearing the Vehicle Identification Number: 3CZRU5H51HM702419 (the "Subject Vehicle"), distributed by Honda.

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM V. AMERICAN HONDA MOTOR CO., INC., ET AL.

23.     In consideration for purchasing the Subject Vehicle, Honda issued and supplied to Plaintiff several written warranties, including a 3 year or 36,000 mile limited warranty, and a 5 year or 60,000 mile powertrain warranty, as well as other stated warranties fully outlined in the Manufacturer's Warranty Booklet.

24.     All such warranties were provided to Plaintiff and not to San Francisco Honda. Plaintiff, as the end user and the consumer, is the intended beneficiary of every express and implied warranty that came with the purchase of the Subject Vehicle.

25.     The defective ECM in the subject vehicles is covered by Honda's written warranties.

26.     Prior to purchasing the Subject Vehicle on October 17, 2016, Plaintiff visited Honda's official website at www.Honda.com ("Honda Website") where she learned about the Subject Vehicle.

27.     The Honda Website contains representations regarding the safety of all Honda vehicles, including the Fit and HR-V Models. The following message is posted on the main page of the Honda Website:



(https://www.honda.com/)

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM V. AMERICAN HONDA MOTOR CO., INC., ET AL.

28.     A consumer who clicks on the "Safety" Message above is redirected to more information and advertisements about Honda's commitment to safety:



([https://www.honda.com/safety](https://www.honda.com/safety))

29.     The Honda Website uses terms like "Safe and Sound" and further boasts "Our Awards, Accolades and Ratings," listing the Honda HR-V and Fit, among other models', NHTSA 5-Star Safety Ratings.[7]

---

[7] https://www.honda.com/safety/our-awards-accolades-and-ratings

-7-

30.    Plaintiff saw these advertisements and representations on the Honda Website, which became impressed in her mind and were a driving force behind her purchasing decision. While on the Honda Website, Plaintiff did not find any disclosures about the Drive-by-Wire defect. Had there been any information about the Drive-by-Wire defect on Honda's Website, Plaintiff would have learned about the defect prior to purchasing the Subject Vehicle and would not have purchased it. Instead, Plaintiff would have purchased a vehicle from Honda's competitors, such as Nissan or Mazda, which while equipped with similar drive-by wire systems, do not suffer from Unintended Acceleration. Moreover, other vehicles manufactured by AHM contain the Drive-by-Wire system, but do not function in such a way to manifest the Unintended Acceleration defect. Upon information and belief, the Drive-by-Wire system is defective in the Honda HR-V and Fit model vehicles due to a defective Engine Control Unit ("ECU").

31.    On or about October 17, 2016, Plaintiff took possession of the Subject Vehicle and subsequently experienced a Drive-by-wire system defect resulting in the Unintended Acceleration of her vehicle that substantially impairs the use, value, enjoyment, and safety of the Subject Vehicle.

32.    Plaintiff's Unintended Acceleration incident occurred on or about Saturday, February 18, 2017, at about 1:00 pm. Plaintiff drove her 8-year-old grandson and her 10-year-old granddaughter to the East Bay Bridge Center, a shopping center located at 3838 Hollis Street, Emeryville, CA 94608.

33.    Plaintiff drove to the area of the parking lot closest to a Panera Bread and Target. She located approximately 5 empty adjacent spots and chose to park in one of them. However, when pulling into the spot, the Subject Vehicle did not stop regardless of plaintiff's attempts to stop the vehicle, and accelerated over the curb and onto a walkway. Perplexed by the situation, Plaintiff attempted to slowly back her vehicle over the curb, and the vehicle again continued to accelerate without any driver input.

34.    The Subject Vehicle continued to accelerate in reverse, without Plaintiff pressing the accelerator, and struck at least one other car and a pickup truck. Striking the

pickup truck brought the Subject Vehicle to a stop. The air bags did not deploy. Plaintiff did not depress the accelerator during either of these Unintended Acceleration events.

35.    Plaintiff's vehicle data confirms that the acceleration pedal was not depressed when the accident took place, even though the engine was revving at increasingly higher RPMs. Honda's own independent testing of the Subject Vehicle corroborates the results, revealing the same data, that the vehicle somehow revved and accelerated while the accelerator pedal was at the 0% depressed position.

36.    After the collision, Plaintiff immediately exited the vehicle to check on her grandchildren. A bystander called the police, who prepared an event report, but told Plaintiff there would be no police report since the incident took place on private property.

37.    The Drive-by-Wire defect was present in the Subject Vehicle at all times, including at the time Plaintiff purchased the Subject Vehicle. The defect occurred while the vehicle was still under Honda's express warranty.

38.    Plaintiff is informed and believes that the Drive-by-Wire defect occurs in other circumstances as well. Due to the Drive-by-Wire defect, Plaintiff justifiably lost confidence in the Subject Vehicle's safety and reliability. Said defect substantially impaired the use, value, and safety of Plaintiff's Honda HR-V.

**ALLEGATIONS COMMON TO PLAINTIFF AND THE PUTATIVE CLASS**

39.    Plaintiff files this class action on behalf of herself, and all others similarly situated ("class members" or "members of the class") and the general public, for damages and/or restitution, as appropriate, for the Class from Honda, for developing, designing, manufacturing, distributing and selling vehicles which are unsafe and fail to perform as warranted.

40.    Honda develops, distributes, markets, advertises and sells Honda branded goods and vehicles, their parts and software, in the United States, designed, manufactured, developed by Honda Motor Company, LTD., a Japanese entity, and/or related entities to Honda.

41.    Honda has a system of authorized Honda dealerships throughout the United

States through which it distributes, markets, advertises and sells those Honda branded goods and vehicles.

42.    Honda's authorized dealerships are tightly controlled by Honda and its agents. Honda controls the marketing practices of its authorized dealerships, the repair facilities within those dealerships, and the appearance of said dealerships. Additionally, Honda trains the personnel at its authorized dealerships.

43.    Honda exercises said control through prewritten policy and procedure manuals, inclusive of repair manuals, warranty manuals, technical training manuals, and by issuing informational bulletins as the need arises.

44.    Based on information and belief, beginning in 2014, AHM developed, distributed, marketed, advertised and sold its third-generation Honda Fit vehicles equipped with Drive-by-Wire. This same Drive-by-Wire system is used in the Honda HR-V, which is built on the same chassis as the Honda Fit. The Drive-by-Wire system is identical in the Honda Fit vehicles and the Honda HR-V model vehicles.

45.    Per Honda's website, Drive-by-Wire "enhance[s] the driving character of the HR-V."[8] Through the use of "smart electronics," Honda claims the HR-V's engine response can be optimized to suit the driving conditions to "better match the driver's expectations."[9] Further, Honda claims that the Drive-by-Wire system helps adjust the relationship between the throttle and engine, resulting in a claimed increase in drivability. Honda also claims that the Drive-by-Wire system helps activate an "econ" mode for increased fuel efficiency.

46.    However, upon information and belief, the ECM module in the Drive-by-Wire system present in the putative class vehicles is defective and fails to properly monitor and respond to commands from the driver. Instead, the ECM causes unintended acceleration of the Class Vehicles as was the case in Plaintiff's unintended acceleration event.

---

[8] http://news.honda.com/newsandviews/article.aspx?id=8462-en

47.     On information and belief, Honda introduced the Drive-by Wire system in the United States in the 2006 model year and was subsequently installed it Drive-by-Wire throughout its range of vehicles in the following years. Today, Honda uses a Drive-by-Wire system on most, if not all, of its vehicles. While Honda uses a Drive-by-Wire system in other models, the defect alleged herein is not present in those vehicles based on Plaintiff's information and belief, as the ECM in those vehicles – and those of Honda's competitors which also use the Drive-by-Wire system – is not defective.

48.     This is not Honda's first run in with Unintended Acceleration with either the Honda Fit or the HR-V. In 2014, Honda recalled over 175,000 Honda Fits and Honda HR-Vs[10] in Japan.[11]

49.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced a sudden and Unintended Acceleration caused by the Drive-by-Wire defect. Examples include 2015-2018 Honda HR-V drivers:

   a.  I was in a parking lot and pulling into a spot. My car suddenly took off as though [I] had my foot hard on the gas. I slammed on the brakes, but did not stop until my car jumped a curb and crashed into the wall of the building in front of me. I was able to back out and park my car after this. It still runs and there is minimal damage to the front of the car, but I am more concerned about what mechanical or electrical defect caused my car to accelerate without my engaging the gas pedal. I've seen other complaints where Honda came back saying it was user error or something with the floor mat, but my floor mat was secured and not anywhere near the pedals. This car was purchased in February 2016 and this occurred in August 2016. It is hard to explain, but felt as though my car had a mind of its own. I know [I] did not have my foot on the wrong

---

[9] Id.
[10] The HR-V is called the "Vezel" in Japan, but is otherwise the same vehicle.
[11] http://jalopnik.com/honda-yes-honda-recalls-175-000-cars-for-unintended-a-1603215615

pedal or accidentally accelerate instead of braking. [T]here was a good 20 feet between where [I] began to turn into the spot and where [I] hit the wall, and [I] could have stopped if my brakes had responded.[12]

(Jennifer C., Houston, Texas – Aug. 15, 2016)

b.  When I was pulling into a parking spot, moving slowly, the car suddenly surged forward, jumped the curb and flattened a parking sign. One moment the car was in the parking space and the next it was up on the grass.

There's no way that a driver pulling into a parking spot would ever use the amount of force it would have taken to jam the gas pedal down enough to cause the car to do that, if it would even be possible.

I've seen a lot of information on the Internet about Honda and sudden acceleration. The dealer said there is nothing from Honda stating a known problem in the 2017 HR-V.[13]

("mleberre" – Jun. 6, 2017)

c.  In motion. Could not stop at 2 [red lights]. Took it to my garage and would not stop again, causing me to crash through laundry room wall, demolishing washer, dryer utility sink etc.

(NHTSA I.D. 10865827 – March 12, 2016)

d.  I was stopped at a stop light on a city street. The car started accelerating on its own even though my foot was on the brake.

(NHTSA I.D. 10807203 – Nov. 23, 2015)

50. As well as 2014-2018 Honda Fit drivers:

a.  While parking the car in the parking space, it suddenly self-accelerated, jumped the curb, and crashed into the wall in front of the car resulting in injuries to both the driver (2 fractured neck vertebrae, 3 fractured ribs on

---

[12] http://www.carcomplaints.com/Honda/HR-V/2016/fuel_system/unintended_acceleration.shtml

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM V. AMERICAN HONDA MOTOR CO., INC., ET AL.

right side, and broken left foot) and passenger (laceration to right hand and bruised ribs on left side). The acceleration was too fast for either the driver or passenger to respond. Airbags did not deploy, and the car was considered a total loss due to the extensive damage to the front end. (NHTSA I.D. 10938686 – Dec. 12, 2016)

b. Unintended and sudden acceleration. November 2015 the car was making a right hand turn into a parking space, while pressing the brake the car suddenly accelerated the brakes did not work, the car traveled about 70 feet before stopping. Took it to tom wood [H]onda all they checked was the brakes and said it was fine.

Update: [F]ebruary 2016 making a right hand turn into a parking space at a [P]anera [B]read gently tapped the brakes the car accelerated and went thru the door at [P]anera [B]read. Tom [W]ood [H]onda checked the brakes says its fine and released it to the collision center. I am making lease payments on this car but when it's repaired it is staying at the lot. It accelerates on [its] own and is going to kill someone. I cannot allow anyone in my family to drive it. I also cannot afford insurance wise to drive a car [I] know accelerates when it decides to.
(NHTSA I.D. 10837576 – Feb. 16, 2016)

c. When my [wife] was moving into a parking slot in front of a grocery store, at the moment of complete stop, the car suddenly accelerated and jumped forward hitting first the concrete block in the parking slot, then the edge of the sidewalk, kept moving fast forward onto the sidewalk and finally coming to an stop when it hit the wall of the grocery store. This is known as "sudden acceleration" or "unintended acceleration". About 175,000 2015 [H]onda fit have been recalled for this very issue in japan.

---

[13] http://www.hrvforum.com/forum/698-hrv-defects-issues-problems/33994-sudden-acceleration.html

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM V. AMERICAN HONDA MOTOR CO., INC., ET AL.

Also, the air bag didn't deploy either causing the bodily injury to the driver (headache, neck and back pain, she has seen doctors and physical therapist).

(NHTSA I.D. – Sept. 1, 2016)

d. TL* the contact owns a 2015 [H]onda fit. While driving approximately 35 mph, the vehicle accelerated unintentionally. In addition, the contact stated that the brakes failed to respond when the pedal was depressed. The contact was able to avoid a crash after the vehicle stopped abruptly. The vehicle was taken to a dealer. The technician informed the contact that the vehicle was functioning as designed. The manufacturer was notified of the failure. The failure mileage was 373.

(NHTSA I.D. 10676935 – Jan. 12, 2015)

51.    Honda conducts road tests on all vehicles distributed in the United States in its "Proving Grounds" in the states of California and Ohio. Honda also tested the Subject Vehicles on public streets and highways in the state of California.

52.    Upon information and belief, before Plaintiff's purchase of her vehicle, Honda road tested the Class Vehicles with Drive-by-Wire. Through those tests, Honda gained exclusive knowledge that the Class Vehicles equipped with Drive-by-Wire suffered from the Unintended Acceleration safety defect.

53.    Upon information and belief, Defendant Honda, as the distributor of Honda vehicles, their parts, and software, gained exclusive knowledge about the Drive-by-Wire defect prior to start of distribution and sale of each of the Class Vehicles from sources not available to Plaintiff and Class Members, which included the following:

a.    Technical Training manuals about the Class Vehicles provided by Honda that described Drive-by-Wire and its limitations;

b.    Documents listing all component parts of the Class Vehicles, including the component parts of the Drive-by-Wire, provided by AHM, and/or related entities to Honda, which demonstrated that the Drive-by-Wire

-14-

could not support the regular and safe operation of the Class Vehicles;

c.      The Class Vehicles' software codes, including the software operating the Drive-by-Wire system provided by Honda and/or related entities to Honda, which demonstrated that Unintended Acceleration could occur;

d.      Honda's 2014 recall of over 175,000 Honda Fits and Honda HR-Vs in the Japanese market.

e.      The Class Vehicles' Service and repair manuals provided by Honda, and/or related entities to Honda, which included information about the design of the Drive-by-Wire system, which demonstrated that a defect might cause Unintended Acceleration in the Class Vehicles;

f.      Other technical and informational materials and data provided by Honda and/or related entities to Honda containing information about the components, safety, software, construction and repair of the Drive-by-Wire system.

54.     Moreover, prior to Plaintiff's purchase, Honda received notice about the dangerous nature of the Drive-by-Wire system from early consumer complaints made directly to Honda authorized dealerships though its internal consumer complaint reporting and resolution system, which is not accessible to the public, Plaintiff and Class Members.

55.     Both Defendants, thus, knew that both Honda models equipped with Drive-by-Wire were unsafe before Plaintiff and the Class Members purchased/leased their Vehicles. Honda knew that the Class Vehicles were unsafe even before beginning the distribution of Class Vehicles as alleged herein.

56.     Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

57.     Even though Honda knew that its Drive-by-Wire system was dangerous in operation, it distributed and marketed the Class Vehicles without disclosing said

information to Plaintiff and the Class Members pre-purchase/lease.

58.    Plaintiff is informed and believes and based thereon alleges that Honda and its authorized dealerships acted in concert and continued to actively conceal the defect even after the Plaintiff and the putative class members complained; by uniformly denying the existence of the defect, by not documenting complaints and the Class Members complaining about the defect to the Honda authorized dealerships, by not documenting Unintended Acceleration related complaints pursuant to Honda's regular business practices, and by labeling the defect a design decision.

59.    Since the start of the distribution of the Class Vehicles, AHM represented on its Website and on marketing and advertisement materials that the Drive-by-Wire increases fuel economy and enhances driving experience, but failed to disclose material facts about the Unintended Acceleration defect, specifically that the Class Vehicles could accelerate on their own out of control.

60.    The Unintended Acceleration defect is material, *inter alia*, because it renders the Class Vehicles inherently unsafe and dangerous for Plaintiff, putative class members, their passenger(s), and persons in other vehicles in the vicinity of the Class Vehicles, and because the Class Vehicles were always defective, including during AHM's original manufacturer's warranty.

61.    AHM had a duty to disclose the Unintended Acceleration defect, because it had exclusive knowledge about said material defect from sources not reasonably discoverable by Plaintiff and the putative class members, because AHM actively concealed the Unintended Acceleration defect by not acknowledging that the Honda vehicles equipped with the Drive-by-Wire were defective, and by not documenting consumer complaints regarding the defect, and because AHM made representations about the increased fuel economy and increased driving experience of the Class Vehicles, but failed to disclose material facts about the Unintended Acceleration defect.

62.    Plaintiff and the putative class members, as reasonable persons, relied on AHM's misrepresentations regarding Drive-by-Wire and the fraudulent concealment of

the Unintended Acceleration defect by AHM, were deceived, and purchased and/or leased Class Vehicles.

63.    Plaintiff and the putative class members suffered economic damage because they would not have purchased/leased the Class Vehicles had they known Class Vehicles were equipped with the defective Drive-by-Wire and would have purchased/leased a comparable vehicle from competing automakers such as Nissan or Mazda.

64.    Honda's competitors' vehicles with substantially similar Drive-by-Wire systems do not have the Unintended Acceleration defect. Like the Class Vehicles, Mazda and Nissan Drive-by-Wire systems eliminate the traditional mechanical cable linkage between the accelerator pedal and the throttle valve of the engine, and replace it with electronics. However, unlike the Class Vehicles, Mazda and Nissan vehicles' Drive-by-Wire systems do not cause Unintended Acceleration. Thus, both Mazda and Nissan vehicles do not have the same safety issue that Honda's Class Vehicles have.

65.    At all relevant times, the Honda entities have been aware of the defective Class Vehicles, and have consciously disregarded the rights and safety of Plaintiff, members of the Class and the general public. Despite said knowledge, the Honda entities, however, have failed to notify owners and lessees of the Class Vehicles of the defects associated with their continued operation as alleged herein, and except as alleged herein, they refused to honor the factory warranties, and denied any problems with the vehicles.

66.    At all relevant times, the Honda entities have not fully disclosed to purchasers or lessees of the Class Vehicles, information regarding the possibility of Unintended Acceleration, caused by the Drive-by-Wire defect on the Class Vehicles as detailed herein, nor have they disclosed the true facts that the Honda entities either knew or recklessly or negligently disregarded the existence and reasons for this inherent defect for years.

67.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

68.    The defective Drive-by-Wire on the Class Vehicles has resulted and will continue to result in significant loss and damage to the Putative Class Members, including but not limited to, interference with use and enjoyment, failure to honor the express and implied warranties, significant diminution in value, and paying significant money for the Drive-by-Wire that cannot be safely used.

69.    Plaintiff is informed and believes and thereon alleges that the benefit to the society from AHM's conduct alleged above is clearly outweighed by the dangerous nature of the Class Vehicles in which the Drive-by-Wire defect causes abrupt Unintended Acceleration of the vehicle out of the driver's control.

70.    Plaintiff is informed and believes and thereon alleges that Defendants' practice in using the defective Drive-by-Wire in the Class Vehicles, and concealing its defective nature has a direct impact on competition between AHM and other car manufacturers and distributors. Being deceived by AHM's concealment, consumers are likely to purchase or lease the Class Vehicles as opposed to competing vehicles with similar Drive-by-Wire systems produced by other car companies, such as Mazda or Nissan, giving AHM a competitive advantage over other car manufacturers and distributors.

71.    Thus, AHM has an incentive to emphasize the benefits provided by the Drive-by-Wire in the Class Vehicles, and downplay the negatives of its system. The fraudulent suppression of material facts affects the market attractiveness of said vehicle as was addressed by the California Supreme Court in the case of *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993).

72.    The collective Honda entities know of the defective nature of the Drive-by-Wire system, but they are suppressing the facts such as Unintended Acceleration defect and significant safety risks it poses, all to the effect of increasing sales.

73.    Consumers are relying to their detriment on the material representations by AHM of the increased fuel economy and increased drivability of the Class Vehicles

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

and are misled by the concealment of said knowledge regarding the Unintended Acceleration defect.

74.   By failing to document visits of consumers to AHM dealerships complaining about the Unintended Acceleration defect and provide repair orders, the Honda entities systematically deprived Plaintiff and other Putative Class Members of their rights by distorting the Class Vehicles' repair histories.

75.   At all times, relevant, Plaintiff is informed and believes, and based thereon alleges that Honda refused to provide the free repair, replacement, recall or retrofitting of the Drive-by-Wire to owners of the Class Vehicles and have refused to reimburse consumers who have paid to have the Drive-by-Wires repaired or reprogrammed in their vehicles.

76.   The Class Vehicles are dangerous for Plaintiff, putative class members, their passenger(s), and third parties when used for their ordinary purpose of providing transportation because of the Unintended Acceleration defect.

77.   Plaintiff is informed and believes and thereon alleges that Class Vehicles are not the same quality as those generally accepted by trade since other competing vehicles, including certain Mazda and Nissan vehicles equipped with substantially similar technology, do not exhibit the Unintended Acceleration defect.

78.   Plaintiff is informed and believes and thereon alleges that Class Vehicles were not substantially free of defects, because they contain the Unintended Acceleration defect that interferes with the drivability of the vehicles.

79.   On or about June 26, 2017, Plaintiff Weinkam provided a written notice to AHM regarding AHM's breach of warranty, violations of the Unfair Competition Law, and violations of the California Legal Remedies Act due to the Unintended Acceleration defect.

80.   AHM refused and failed to repair the Unintended Acceleration defect and to conform the Class Vehicles to their warranties.

81.   Plaintiff and the putative class members suffered economic harm because

their vehicles are unmerchantable and are worth less than what they paid/pay for them.

82.     Plaintiff and the putative class members suffered economic harm because they bargained for and paid for the factory warranties, which AHM breaches by refusing to repair the Class Vehicles.

83.     Plaintiff and Class Members suffered economic harm, because they would not have purchased/leased the Class Vehicles, but for AHM's fraudulent concealment and misrepresentation of the Unintended Acceleration defect as alleged herein, but would have purchased or leased the non-defective vehicles of other manufacturers instead.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

84.     This action seeks financial compensation for members of the Class in connection with their lease/purchase of the Subject Vehicles. Plaintiff does not seek: (i) damages for personal, bodily, or emotional injury or wrongful death; or (ii) damages for becoming subject to liability or legal proceedings by others.

85.     This action has been brought and may properly be maintained as a class action pursuant to the provisions of FRCP Rule 23 and other applicable law by Plaintiff on behalf of herself and a Class defined as follows:

a) *National Class*: The Class that Plaintiff seeks to represent ("National Class") is defined to include all persons within the United States who purchased or leased, or will purchase or lease, a Subject Vehicle, on or after Defendants placed the Class Vehicles into the stream of commerce. Excluded from the National Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this case.

b) *California Sub-Class*: All members of the nationwide class that reside in the State of California.

c)  *California Consumer Sub-Class*: All members of the California Sub-Class that purchased/leased the Class Vehicles for personal, family, and household use.

86.  *Numerosity and Ascertainability*: The classes are so numerous that individual joinder of all Putative Class Members is impractical under the circumstances. The disposition of the claims of these Putative Class Members in a single action will provide substantial benefit to all parties and the Court. The Putative Class Members can be ascertained by, among other things, information and records in Defendants' possession custody or control, lease/sales records, records kept by the Department of Motor Vehicles of various States and by responses to methods of class notice permitted by law.

87.  *Typicality*: Representative Plaintiff's claims are typical of the claims of the Class in that the representative Plaintiff, like all Putative Class Members, purchased or leased Class Vehicles designed, manufactured, and distributed by Defendants with the defective Drive-by-Wire. The representative Plaintiff, like all Putative Class Members, relied upon Defendants' representations regarding the safety of its vehicles, including the Class Vehicles, and has been damaged by Defendants in that they have incurred or will incur violation of their statutory rights, economic loss, and failure to meet their expectations. Furthermore, the factual basis of AHM's misconduct is common to all Putative Class Members and represents a common thread of fraudulent, deliberate, and negligent conduct resulting in injury to all Putative Class Members.

88.  *Commonality*: Common Questions Predominate: Common questions of law and fact exist as to all Putative Class Members, and predominate over any questions that effect only individual members of the class, if there are any individual questions. The common questions of law and fact include, but are not limited to:

1)  Whether the Class Vehicles were designed, manufactured, sold and/or otherwise equipped with the Drive-by-Wire that is of poor, weak, or inferior design and/or otherwise defective;

2)      Whether the Class Vehicles contain a defective ECM module which fails to properly monitor and respond to commands from drivers;

3)      Whether the Class Vehicles' defective ECM component contributes to, causes, or has the potential to cause the Class Vehicles' Unintended Acceleration;

4)      Whether Defendants knew of the defective nature of the Drive-by-Wire on the Class Vehicles;

5)      Whether Defendants violated California consumer protection statutes;

6)      Whether Defendants breached their implied warranties;

7)      Whether Defendants breached their express warranties;

8)      Whether Defendants' Drive-by-Wire on the Class Vehicles contained an inherent design and/or manufacturing defect;

9)      Whether the defect in the Drive-by-Wire caused and/or contributed to the Class Vehicles' Unintended Acceleration, when Class Vehicles were used for their intended purpose (driving);

10)     Whether the advertisements and statements made by Defendants were, and are false and/or had and have had a tendency to deceive customers, by either failing to disclose the existence of an inherent defect or misrepresenting that the Class Vehicles contained no defects;

11)     Whether Defendants failed to adequately warn and/or notify Putative Class Members and the general public regarding the defects of the Drive-by-Wire on the Class Vehicles causing the vehicles' Unintended Acceleration, due to their inherent design or defect as described herein;

12)     Whether Defendants have failed to notify all Subject Vehicle owners or lessees of the defect here at issue and repair or correct (or offer to repair or correct) all defective Drive-by-Wire systems on the Class Vehicles at no cost to the owners or lessees of the Class Vehicles;

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM V. AMERICAN HONDA MOTOR CO., INC., ET AL.

13)     Whether Defendants are obligated to inform the Class of their right to obtain, free of charge, repair or replacement of the defective Drive-by-Wire systems on the Class Vehicles;

14)     Whether Defendants adequately informed Dealers of the remedies to the design or defect as described herein;

15)     Whether Defendants are required to pay restitution and be disgorged of the profits they made on the Class Vehicles.

16)     The nature and extent of Defendants' implied warranty of merchantability for the Drive-by-Wire systems;

17)     Whether the Plaintiff was entitled, and the putative class is entitled to restitution for the money they paid for the Class Vehicles; and whether defendants are subject to disgorgement of profits as a result of the sale of the Class Vehicles;

18)     Whether Defendants concealed from and/or failed to disclose to Plaintiff and the Class the true defective nature of the Drive-by-Wire;

19)     Whether Defendants had a duty to Plaintiff and the Class to disclose the defective nature of Drive-by-Wire;

20)     Whether the facts concealed and/or otherwise not disclosed by Defendants with respect to the safety of Drive-by-Wire to Plaintiff and the Class are material facts;

21)     Whether the facts concealed and/or otherwise not disclosed by Defendants with respect to the Unintended Acceleration defect to Plaintiff and the Class are material facts;

22)     Whether Defendants knew that Drive-by-Wire was defective and would result in Unintended Acceleration, decreased control and braking ability, and as such, the Class Vehicles were not suitable for use as passenger vehicles, and otherwise are not as warranted and represented by Defendants;

-23-

23)     Whether Defendants knew or reasonably should have known about the Drive-by-Wire defect(s);

24)     When Defendants learned of the Unintended Acceleration defect;

25)     Whether Defendants continued to lease/sell the Class Vehicles with the defective Drive-by-Wire as alleged herein despite their knowledge and/or reckless or negligent disregard of the defect;

26)     To the extent there exists a fix, the cost of repair of the defective Drive-by-Wire system on the Class Vehicles and any out-of-pocket expenses incurred in connection therewith, and if so, the nature and amount of such damages;

27)     Whether Plaintiff and the Class are entitled to recover damages and the proper measure of damages;

28)     Whether Plaintiff and the Class are entitled to equitable relief, including disgorgement;

29)     Whether Plaintiff and the Class are entitled to declaratory relief sought herein;

30)     Whether Plaintiff and the Class are entitled to injunctive relief sought herein;

31)     Whether the Drive-by-Wire system caused the amount paid for the purchase or lease of the Class Vehicles to be more than the fair market value of a similar priced vehicle; and

32)     Whether there is a difference between the fair market value of the Subject Vehicles and the actual value of those vehicles given the presence of the defective Drive-by-Wire.

89.     *Adequate representation*: Plaintiff is a member of the Class and will fairly and adequately protect the interests of the members of the class. Specifically, Plaintiff visited the Honda Website where Honda touted its commitment to safety and vehicle safety ratings and awards to consumers seeking both HR-V and Fit models. In accordance

with Honda's general representations as to safety and reliability, the representations were made generally prior to details about any specific Honda model being sought out; and both the Fit and HR-V vehicles were listed among top safety award recipients on the Honda website. Moreover, the defect in the Drive-by-Wire system which caused the SUI incident is the same in both the Honda Fit and the Honda HR-V in that both vehicles, upon information and good faith belief, contain a defective ECM module which, working within the Drive-by-Wire system, causes the Unintended Acceleration. The interests of the Plaintiff are coincident with, and not antagonistic to, those other members of the class. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel, who is competent and experienced in handling complex and class action litigation on behalf of consumers.

90.    *Superiority and Substantial Benefit*: A class action is superior to all other available methods for the fair and efficient adjudication of the controversy. The prosecution of separate actions by individual members of the Class would create a risk of: (1) Inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and (2) Adjudication with respect to the individual members of the Class would substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests. The class action method is appropriate for the fair and efficient prosecution of this action. Individual litigation of the claims brought herein by each Class Member would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment, by contract provides manageable judicial treatment calculated to rapidly conclude all litigation of all claims arising out of the aforesaid conduct of Defendants. The certification of the Class would allow litigation of claims that, in view of the expense of the litigation may be sufficient in amount to support separate actions.

## TOLLING OF STATUTE OF LIMITATIONS

91.    Any applicable statutes of limitation have been equitably tolled by Honda's affirmative acts of fraudulent concealment, suppression, and denial of the true facts regarding the existence of the inherent defects alleged herein. Such acts of fraudulent concealment include, but are not limited to intentionally covering up and refusing to publicly disclose critical internal memoranda, design plans, studies, Notices of Action, Problem Detail Reports and other reports of failure and injury, as well as affirmative misrepresentations made to people who called or otherwise contacted the Honda entities attempting to identify and resolve this defect. Through such acts of fraudulent concealment, Honda was able to actively conceal from the public for years the truth about the defective design and manufacture of the Drive-by-Wire system on the Class Vehicles, thereby tolling the running of any applicable statute of limitations.

92.    Defendants are estopped from relying on any statutes of limitation because of their misrepresentation and fraudulent concealment of the true facts, as described herein, concerning the Drive-by-Wire system on the Class Vehicles. Defendants were, at all times aware of the true nature of the defects as described herein but at all times continued to manufacture and market the Class Vehicles despite this knowledge.

## FIRST CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### *(California Sub-Class)*

93.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

94.    Plaintiff brings this cause of action on behalf of herself and on behalf of the California Subclass.

95.    Honda provided all nationwide purchases and lessees of the Class Vehicles with a 3 year/36,000 mile factory warranty and 5 year/60,000 mile powertrain warranty against defects in materials or workmanship ("Warranty").

-26-

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

96.    Said Warranty was provided in consideration for the lease/purchase of the Class Vehicles, became part of the basis of the bargain, because it was incorporated into the lease/purchase agreements of all Class Vehicles.

97.    Plaintiff and the Class Members learned about the existence of such Warranty pre-purchase/pre-lease, and as reasonable persons, relied on the existence of such warranty. Plaintiff's and Class Members' conduct of purchasing/leasing Class Vehicles is in accordance with their reliance on said Warranty.

98.    The Drive-by-Wire defect, and, more specifically, the defective ECU component thereof, complained herein is a defect in materials and/or workmanship and is covered under the Warranty. Applying any warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, inter alia, the vehicles at issue contain a defect at the time of delivery, Honda was either aware of or consciously and/or recklessly disregarded this defect which could not be discovered by Plaintiff and members of the class at the time of such purchase or lease, and purchasers or lessees lacked any meaningful choice with respect to the warranty terms.

99.    Defendants have and continue to breach said express warranties by failing to repair the defects in materials and workmanship in the Drive-by-Wire system.

100.    Furthermore, Honda represented that the Class Vehicles were equipped with tested and validated Drive-by-Wire systems that increased fuel economy and drivability without the risk of Unintended Acceleration.

101.    Honda's representations about the Drive-by-Wire system on the Fit and HR-V vehicles were false representations of fact, that were known by the Defendants to be untrue at the time they were made and were intended to create reliance.

102.    Honda's representations about the Drive-by-Wire system on HR-V and Fit vehicles, thus created express warranties that the HR-V and Fit vehicles would contain an effective Drive-by-Wire system.

-27-

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

103.  Honda breached the express warranties by selling Fit and HR-V vehicles, which lack an effective Drive-by-Wire system; and by failing to repair/fix the flaws in the Drive-by-Wire system.

104.  Honda's breach caused injury to Plaintiff and putative Class Members, because Plaintiff and putative Class Members did not get the benefit of their bargain, which included, inter alia, an effective Drive-by-Wire system.

105.  Defendants have and continue to breach their express warranties as alleged herein, because Honda Fit and HR-V vehicles lack an effective Drive-by-Wire system at the time of sale; because Honda fails to repair/fix the flaws in the Drive-by-Wire system.

106.  As a result of Defendants' breach of express warranties as set forth above, Plaintiff and others similarly situated have suffered and will continue to suffer damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

*(California Sub-Class)*

107.  Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

108.  Plaintiff brings this cause of action on behalf of herself and on behalf of Putative Class Members.

109.  The Class Vehicles are manufactured goods.

110.  The transactions by which the Putative Class Members purchased the Subject Vehicles were transactions for the sale of goods and at all times relevant, AHM was the manufacturer, distributor, and/or designer of Class Vehicles and placed these products into the stream of commerce throughout the United States, including California.

111.  Plaintiff and Putative Class Members leased and/or purchased Subject Vehicles from authorized Honda dealers and were the intended beneficiaries of any warranty agreements.

112.   Class Vehicles came with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purpose for which they were leased/purchased, were the same quality as those generally accepted in the trade, were not of poor or below average quality within the description and/or conformed to the affirmations of fact made by Defendants on the Internet, in its brochures, warranty materials and/or product inserts it provided along with the lease/sale of the Class Vehicles.

113.   The Unintended Acceleration defect in the Class Vehicles renders them non-conforming goods and/or goods that were not the same quality as those generally accepted in the trade, were not fit for the ordinary purposes for which the goods are used, were of poor or below average quality within the description and/or did not conform to the affirmations of fact made by AHM on the Internet, in its brochures, product inserts and/or warranty materials it provided along with the lease/sale of the Subject Vehicles. AHM republished said affirmation of facts that the Drive-by-Wire system was safe and reliable.

114.   The Class Vehicles, at all times relevant herein, were and are not fit for the ordinary purposes for which the goods are used, because the defective Drive-by-Wire system poses an unreasonable risk to safety of Putative Class Members and passenger(s) of Class Vehicles when they operate the vehicles to use them for their ordinary purposes. The Class Vehicles could never meet the advertised drivability because of the Unintended Acceleration defect.

115.   The Class Vehicles, at all times relevant herein, were of poor or below average quality as alleged herein.

116.   Class Vehicles, at all times relevant herein, did not and do not have the quality that a buyer/lessee would reasonably expect.

117.   Class Vehicles, at all times relevant herein, were unsafe and not substantially free of defects as alleged herein.

118.   Upon discovering the defect in the Drive-by-Wire on the Class Vehicles, Plaintiff took reasonable steps to notify Defendant AHM within a reasonable time that the product did not have the expected quality and contained the defects as alleged herein.

119.   At all times relevant, AHM has failed and/or refused to repair the defects in the Drive-by-Wire of Subject Vehicles, and has failed and refused to do so.

120.   As a direct and proximate result of the foregoing, Plaintiff and all the other Putative Class Members sustained significant loss and damage, including but not limited to reduced fair market value and did not receive the benefit of their bargain:  they purchased a vehicle with the Drive-by-Wire, which was unusable due to the safety risks it posed, instead of purchasing a vehicle from a competitor of AHM that did not pose such safety risks.

**THIRD CAUSE OF ACTION**

**BREACH IMPLIED OF WARRANTY**

**SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE § 1790 *et seq.***

*(California Sub-Class)*

121.   Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Plaintiff's Complaint.

122.   Plaintiff brings this cause of action on behalf of herself and on behalf of the members of California Sub-Class against all Defendants.

123.   The transactions by which the Putative Class Members purchased the Subject Vehicles were transactions for the sale of goods and at all times relevant, Defendants were manufacturers, distributors, and/or designers of Class Vehicles and placed these products into the stream of commerce throughout the United States, including California.

124.   Defendants were at all relevant times, jointly and severally, the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

1    125.   The Class Vehicles are manufactured goods.

2    126.   The Class Vehicles came with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purpose for which they were leased/purchased, were the same quality as those generally accepted in the trade, were not of poor or below average quality within the description and/or conformed to the affirmations of fact made by the Honda entities specifically that items in their packages for specific vehicles were safe, warranty materials, and more generally in their product inserts, they provided along with the lease/sale of the Class Vehicles.

127.   The Unintended Acceleration defect in the Class Vehicles renders them non-conforming goods and/or goods that were not the same quality as those generally accepted in the trade, were not fit for the ordinary purposes for which the goods are used, were of poor or below average quality within the description and/or did not conform to the affirmations of fact made by the Honda entities in their labeling, product inserts and/or warranty materials they provided along with the lease/sale of the Class Vehicles.

128.   The Subject Vehicles, at all times relevant herein, were and are not fit for the ordinary purposes for which the goods are used, namely as a reasonably safe means of transportation, because the defective Drive-by-Wire system poses an unreasonable safety risk to Putative Class Members and passenger(s) of Class Vehicles when they operate the vehicles to use them for their ordinary purposes.

129.   Subject Vehicles, at all times relevant herein, did not and do not have the quality that a buyer/lessee would reasonably expect.

130.   The Honda entities' breach caused injury to Plaintiff and Putative Class Members, because Plaintiff and Putative Class Members did not get the benefit of their bargain, which included, *inter alia*, a safe and reliable Drive-by-Wire system containing parts which operate together safely, including but not limited to the ECM.

131.   Plaintiff Weinkam provided notice to Defendant AHM of their breach as alleged herein.

132.    Upon discovering the defects in the Drive-by-Wire system on the Subject Vehicles, Plaintiff took reasonable steps to notify Defendant AHM within a reasonable time that the product did not have the expected quality and contained the defects as alleged herein.

133.    At all times relevant, AHM has failed and/or refused to repair the defects in the Drive-by-Wire of the Subject Vehicles, and has failed and refused to do so at no charge to the Putative Class Members.

134.    As a direct and proximate result of the foregoing, Plaintiff and all the other Putative Class Members sustained significant loss and damage, including but not limited to reduced fair market value and did not receive the benefit of their bargain.

**FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY**

**MAGNUSON-MOSS WARRANTY ACT, 15 U. S. C. § 2301 et seq.**

*(Nationwide Class)*

135.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

136.    The Subject Vehicles and respective Drive-by-Wire on the Subject Vehicles are "consumer products" as that term is defined by 15 U. S. C. § 2301(1).

137.    Plaintiff and Class Members are "consumers" as that term is defined by 15 U. S. C. § 2301(3).

138.    AHM is a "supplier" as that term is defined by 15 U. S. C. § 2301(4).

139.    AHM is a "warrantor" as that term is defined by 15 U. S. C. § 2301(5).

140.    AHM provided Plaintiff and Class members with "written warranties" as that term is defined by 15 U. S. C. § 2301(6).

141.    The amount in controversy of the Plaintiff's individual claim meets or exceeds the value of $25.00.  In addition, the amount in controversy meets or exceeds the value of $75,000.00 (exclusive of interests and costs) computed on the basis of all claims to be determined in the suit.

142.   Section 15 U. S. C. § 2310(d)(1) provides that a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state or in an appropriate District Court of the United States.

143.   AHM made statements in its advertising, promotion, marketing and sales of the Subject Vehicles, and by operation of law, constitute implied warranties that these vehicles are merchantable and fit for their intended purpose. Moreover, AHM made specific representations regarding the safety of the Class Vehicles and its electronic system, including the ECM alleged to be defective, to Plaintiff and the putative Class members.

144.   At all times relevant, Defendants had reason to know at the time of the lease/sale and delivery of the Subject Vehicles that they were required for a particular purpose, namely as means of safe transportation on the roads and highways of California and throughout the United States on the daily basis, and the Drive-by-Wire system was meant to increase fuel economy and drivability without risk or danger of Unintended Acceleration, or placing consumers at increased risk of automobile collisions.

145.   The consumers' reasonable expectation was that the Subject Vehicles would function without an increased risk of car accidents or the need to retrofit the Drive-by-Wire system during the ordinary and regular course of using a motor vehicle, and that the purchasers, owners and/or lessees were relying on the manufacturer's skill and judgment to develop, design, manufacture, distribute, and sell a vehicle with a suitable Drive-by-Wire.

146.   The Unintended Acceleration defect in the Class Vehicles renders them non-conforming goods and/or goods that were not the same quality as those generally accepted in the trade, were not fit for the ordinary purposes for which the goods are used, were of poor or below average quality within the description and/or did not conform to

the affirmations of fact made by the Honda entities in their labeling, product inserts and/or warranty materials they provided along with the lease/sale of the Class Vehicles.

147.    The Subject Vehicles, at all times relevant herein, were and are not fit for the ordinary purposes for which the goods are used, namely as a reasonably safe means of transportation, because the defective Drive-by-Wire system poses an unreasonable safety risk to Putative Class Members and passenger(s) of Class Vehicles when they operate the vehicles to use them for their ordinary purposes.

148.    Subject Vehicles, at all times relevant herein, did not and do not have the quality that a buyer/lessee would reasonably expect.

149.    Defendants breached these implied warranties by offering, selling or leasing the Subject Vehicles that, by their design and construction, contained defects that made the Drive-by-Wire system inherently dangerous. AHM also breached these warranties by failing to warn Plaintiff and the Class Members of the defects as alleged herein, which were, at all relevant times known to AHM.

150.    Plaintiff Weinkam provided notice to Defendant AHM of its breach as alleged herein.

151.    AHM's breach caused injury to Plaintiff and Putative Class Members, because Plaintiff and Putative Class Members did not get the benefit of their bargain, which included, *inter alia*, a safe and reliable Drive-by-Wire system.

152.    Because of AHM's breach of warranties as set forth above, Plaintiff and members of the class have suffered damages in an amount to be determined at trial, including but not limited to the cost of repair or retrofit of the Drive-by-Wire system on the Subject Vehicles and any out-of-pocket expenses associated therewith. Plaintiff and members of the class are also entitled to an order of the Court requiring AHM to provide repair and replacement of the defective Drive-by-Wire system on the Subject Vehicles.

153.    Plaintiff and members of the Class are also entitled to a refund or reimbursement for all amounts they have paid to have the Drive-by-Wire system repaired

and/or retrofitted and seek any other legal or equitable relief to be determined at the time of trial.

**FIFTH CAUSE OF ACTION**

**CALIFORNIA UNFAIR COMPETITION LAW,**

**BUSINESS AND PROFESSIONS CODE § 17200 *et seq*.**

*(California Sub-Class)*

154.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

155.   Plaintiff brings this claim on behalf of herself and others similarly situated in her representative capacity as a private attorney general against all Defendants for their unlawful, unfair, fraudulent, untrue and/or deceptive business acts and/or practices pursuant to California Business and Professions Code § 17200 *et seq.* ("UCL"), which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

156.   Plaintiff asserts these claims as they are representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the restitutionary remedy provided by California Business and Professions Code § 17200 *et seq.*

157.   Plaintiff has standing to bring this claim on behalf of herself and others similarly situated pursuant to California Business and Professions Code § 17200 *et seq,* because Plaintiff suffered injury-in-fact, *inter alia,* because Plaintiff would not have purchased the Class Vehicle, if she had known about the dangerous Unintended Acceleration defect on the Class Vehicle manufactured, distributed, and sold by Defendants. Plaintiff also did not receive the benefit of the bargain and/or overpaid for her vehicle, making lease payments that were too high. Had Plaintiff known of the defective Drive-by-Wire system, she could have instead purchased a different vehicle, such as a Mazda or Nissan, with a Drive-by-Wire that does not suffer from Unintended Acceleration.

158.    The acts, omissions, misrepresentations, practices and non-disclosures of Defendants as alleged herein constitute unlawful, unfair and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code § 17200 *et seq.*

159.    The acts, omissions, misrepresentations, practices, non-disclosures and/or concealments of material facts, and/or deception alleged in the preceding paragraphs occurred in connection with Defendants' conduct of trade and commerce in California.

160.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies expended by Plaintiff and others similarly situated who leased/purchased the Subject Vehicles.

161.    Defendants manufactured, distributed, and sold/leased the Class Vehicles to Plaintiff and the Class Members.

162.    The Class Vehicles had at the time of manufacturing, distributing, manufacturing, and selling a known tendency of Unintended Acceleration, described above.

163.    Defendants gained exclusive knowledge about the Unintended Acceleration defect prior to the sale and distribution of the Class Vehicles from sources not available to Plaintiff and the putative class as alleged herein.

164.    AHM knew that the Class Vehicles had the risk of exposing the Class Members to increased danger of car accidents, because the Class Vehicles were prone to Unintended Acceleration, as alleged herein.

165.    The tendency of Unintended Acceleration, described above, was an ever-present substantial danger when the Plaintiff and the Class Members used the Class Vehicles for their ordinary purpose of transportation.

166.    Ordinary consumers would not have and did not recognize the likelihood of the Class Vehicles experiencing the above-described issues because they are not familiar with the technological principles of the operation of the Drive-by-Wire system on a vehicle.

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

167.   Ordinary consumers would not have and did not recognize the likelihood of the Class Vehicles experiencing the above-described issues because they reasonably relied on AHM's experience and expertise in designing, manufacturing, and selling vehicles that would be safe and reliable. Moreover, AHM made affirmative representations regarding the safety of its vehicles, the technology it allegedly uses to prevent crashes, and the numerous safety awards its vehicles have won.

168.   AHM failed to adequately warn the Plaintiff and the Class Members of the potential tendency of Unintended Acceleration, described above, when operating the Class Vehicles, due to the defective Drive-by-Wire system as alleged herein.

169.   Defendants' misrepresentations had a material effect on the decision as to whether to buy the Class Vehicles or comparable vehicles from AHM's competitors without the Unintended Acceleration defect. Had the defect been disclosed by AHM, Plaintiff and those similarly situated would never have purchased the Class Vehicles.

170.   Honda's misconduct as alleged in this action constitutes negligence and other tortious conduct and this misconduct gave these Defendants an unfair competitive advantage over its competitors.

171.   Had Defendants disclosed, and/or had Plaintiff and those similarly situated been aware of the information regarding the Unintended Acceleration defect, etc., Plaintiff and those similarly situated would have known of the defect in the Class Vehicles' Drive-by-Wire.

172.   Based on balancing the welfare of the community and public interest, the utility to AHM, and each of them, is *de minimis*, so that the conduct of the Honda entities is morally reprehensible, unethical, and unscrupulous. Honda's practice is offensive to public policy and is immoral and substantially injurious to consumers.

173.   The benefit to society from AHM's unfair conduct is outweighed by the dangerous nature of the Class Vehicles.

174.   Plaintiff is informed and believes and thereon alleges that Defendants' practice of representing that Drive-by-Wire increases drivability and fuel economy, and

failure to adequately disclose that the Honda's Drive-by-Wire has safety flaws that impact the competition between Honda and its competitors, such as Nissan and Mazda. This practice gives Honda a competitive advantage over other businesses operating in the same market.

175.   AHM fraudulently concealed the Unintended Acceleration defect's existence from Plaintiff and the Putative Class Members.

176.   AHM intended to deceive Plaintiff and Class Members by concealing the Unintended Acceleration defect, motivated by market share and profit margin.

177.   AHM disclosed some facts to Plaintiff on its websites and print marketing materials, but intentionally failed to disclose that the Drive-by-Wire system would pose an unreasonable reliability issue and safety hazard to Putative Class Members and passengers of Class Vehicles.

178.   At all times relevant herein, the existence of the Unintended Acceleration defect was a material fact, because it concerned the safety of the Plaintiff, Putative Class Members, their passenger(s), and their family member(s).

179.   As alleged herein, AHM knowingly promoted and advertised its Class Vehicles in an unlawful, unfair, fraudulent, untrue, and/or deceptive manner that is and was likely to deceive the public.

180.   These advertisements, due to the national scope and extent of Defendants' multi-media campaign, were uniformly made to all members of the class. Class Members' acts of leasing and/or purchasing the Subject Vehicles were consistent with basing such decisions upon such advertisements, inclusive of the increased fuel economy and increased drivability of the vehicles equipped with Drive-by-Wire, the factory warranties, and that the vehicle would be safe, which thus formed part of the basis for the transaction at issue, or the benefit of the bargain, which was material; had Plaintiff and the putative Class Members known differently as to the reliability and safety of the Drive-by-Wire, they would not have purchased said Class Vehicles but would have

purchased different vehicles, such as Mazda and Nissan, with a Drive-by-Wire that does not suffer from Unintended Acceleration.

181.    AHM's conduct constitutes unfair acts or practices conducted in the course of Defendants' respective businesses, and thereby constitutes violations of California Business and Professions Code § 17200 *et seq.* AHM's conduct and intent to widely market the Subject Vehicles to California consumers involved false and misleading advertising. Such conduct offends the established public policy of the State of California and is immoral, unethical, oppressive, unscrupulous, and substantially injurious.

182.    Pursuant to California Business and Professions Code § 17203 of the UCL, Plaintiff seeks an order of this Court enjoining AHM from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited by the UCL.

183.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and profits realized by Defendants.

184.    AHM's conduct, as fully described herein, constitutes acts of untrue and misleading advertising and is, by definition, violation of California Business and Professions Code § 17200 *et seq.*

185.    The unlawful, unfair, deceptive, and/or fraudulent business practices and/or false and misleading advertising of AHM, as described herein, present a continuing threat to the public to be injured by the Subject Vehicles equipped with the defective Drive-by-Wire as alleged herein.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
## CIVIL CODE § 1750 *et seq.*
### *(California Consumer Sub-Class)*

186.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

187.   The Subject Vehicles are "goods" within the meaning of Civil Code § 1761(a).

188.   Defendants are "persons" as defined by Civil Code § 1761(c).

189.   Plaintiff and each member of the Class are "consumers" within the meaning of Civil Code § 1761(d).

190.   The Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.* applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

191.   At all times relevant herein, AHM made numerous representations about the Class Vehicles' fuel economy, drivability, safety, and performance that were misleading to consumers, including Plaintiff and the members of the class.

192.   As alleged herein, AHM knowingly promoted and advertised its Class Vehicles in an unlawful, unfair, fraudulent, untrue and/or deceptive manner that is and was likely to deceive the public. Plaintiff and other members of the class were deceived by Defendants' failure to disclose that the Class Vehicles suffered from the Unintended Acceleration defect in its Drive-by-Wire systems and Defendants' affirmative representations regarding the safety and advanced technology of the Class Vehicles.

193.   Defendants' misrepresentations and omissions about the Class Vehicles pertained to material facts, because they concerned the safety of a consumer good that is used by Class Members, their passenger(s) and their family member(s). Reasonable consumers, such as Plaintiff and the members of the class, would have considered these facts important in deciding whether to purchase or lease the Class Vehicles. Had Plaintiff and other members of the class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or paid the prices they paid.

194.   Defendants have violated the CLRA in at least the following respects:

  a.   In violation of Civil Code § 1770(a)(5), Defendants have represented that the Subject Vehicles have characteristics and benefits that they do

-40-

not have;

   b. In violation of Civil Code § 1770(a)(7), Defendants have represented that the Subject Vehicles are of a particular standard, quality, or grade when they are not;

   c. In violation of Civil Code § 1770(a)(9), Defendants have advertised the Subject Vehicles without an intent to sell them as advertised;

   d. In violation of Civil Code § 1770(a)(18), Defendants have represented that the Subject Vehicles were supplied in accordance with previous representations when they were not; and

195.    Defendants' deceptive acts alleged herein occurred in the course of selling a consumer product and Defendants have done so continuously through the filing of this Complaint.

196.    As a direct and proximate result of Defendants violation of Civil Code § 1770 *et seq.*, Plaintiff and other Class members have suffered irreparable harm and monetary damages entitling them to both injunctive relief and restitution. Plaintiff, on behalf of herself and on behalf of the Class, seeks damages and all other relief allowable under the CLRA.

197.    Defendants' wrongful conduct, as set forth above, was willful, oppressive, and malicious.

198.    Pursuant to Civil Code § 1782, Plaintiff provided notice to Defendants at least thirty days prior to filing this action.

199.    Defendants failed to make the showing required by Civil Code § 1782(c).

200.    As a result, Plaintiff seeks actual damages for violation of the CLRA. In addition, pursuant to Civil Code § 1782(a)(2), Plaintiff and members of the class are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court under Civil Code § 1780.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500 *et seq*.**

*(California Sub-Class)*

201.  Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

202.  Plaintiff brings this claim on behalf of herself and the California Sub-Class.

203.  Plaintiff has standing to bring this claim on behalf of herself and others similarly situated because Plaintiff has lost money as a result of the misconduct alleged. Plaintiff would not have purchased the Class Vehicle, if she had known about the dangerous Unintended Acceleration defect on the Class Vehicles manufactured, distributed, and sold by Defendants. Plaintiff also did not receive the benefit of the bargain and/or overpaid for her vehicle, making finance payments that were too high. Had Plaintiff known of the defective Drive-by-Wire system, she could have instead purchased a different vehicle, such as a Mazda or Nissan, with a Drive-by-Wire system that does not suffer from Unintended Acceleration.

204.  At all times relevant herein, AHM made numerous representations about the Class Vehicles' fuel economy, drivability, and performance, some of which were represented to have been achieved by the Drive-by-Wire system. These representations were misleading to consumers, including Plaintiff and the members of the class.

205.  As alleged herein, AHM knowingly promoted and advertised its Class Vehicles in an unlawful, unfair, fraudulent, untrue and/or deceptive manner that is and was likely to deceive the public. Plaintiff and other members of the class were deceived by Defendants' failure to disclose that the Class Vehicles suffered from the Unintended Acceleration defect in its Drive-by-Wire systems.

206.  Defendants' misrepresentations and omissions about the Class Vehicles pertained to material facts, because they concerned the safety of a consumer good that is used by Class Members, their passenger(s) and their family member(s). Reasonable consumers, such as Plaintiff and the members of the class, would have considered these

facts important in deciding whether to purchase or lease the Class Vehicles. Had Plaintiff and other members of the class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or paid the prices they paid.

207. In making such misrepresentations and wrongful acts, Defendants committed acts of untrue and misleading advertising as defined in *Business and Professions Code § 17500*.

208. The acts of untrue and misleading advertising by Defendants described above present a continuing threat to members of the general public in that Defendants persist and continue to engage in these practices with respect to the general public, and will not cease doing so unless and until an injunction is issued by this Court.

209. As a direct result of the aforementioned acts, Defendants have received, and continue to unjustly hold, collect or accept revenues derived directly or indirectly from Plaintiff and others similarly situated, through untrue and misleading advertising.

210. In accordance with the provisions of *Business and Professions Code §§ 17500 and 17535*, Plaintiff and others similarly situated is entitled to an order enjoining the acts of untrue and misleading advertising described herein and directing Defendants to make full restitution to Plaintiff and others similarly situated, who have suffered from such acts.

## EIGHTH CAUSE OF ACTION
## COMMON LAW FRAUD
### *(Nationwide Class)*

211. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

212. Plaintiff brings this cause of action on behalf of herself and on behalf of California Sub-Class.

213. At all times relevant herein, AHM made numerous representations about the Class Vehicles' fuel economy, drivability, and performance that were misleading to consumers, including Plaintiff and the members of the class.

214. While representing to consumers that the Class Vehicles were safe and reliable, and that they provided superior fuel economy and drivability as a result of the Drive-by-Wire system, Defendants fraudulently concealed the material facts regarding the Unintended Acceleration defect. Thus, Defendants made partial representations about the Class Vehicles, but failed to qualify these representations with other material facts.

215. In addition, Defendants had a duty to disclose the material facts pertaining to the Unintended Acceleration defect because the knowledge was exclusive to them, as described above, and Defendants knew that this knowledge was not available to Plaintiff and other consumers.

216. Defendants' misrepresentations and omissions about the Class Vehicles pertained to material facts, because they concerned the safety of a consumer good that is used by Class Members, their passenger(s) and their family member(s). Reasonable consumers, such as Plaintiff and the members of the class, would have considered these facts important in deciding whether to purchase or lease the Class Vehicles. Had Plaintiff and other members of the class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or paid the prices they paid.

217. Defendants made the misrepresentations and omissions described above to Plaintiff and putative class members with an intent to induce Plaintiff and putative class members to purchase or lease the Class Vehicles.

218. Plaintiff and putative class members reasonably and justifiably relied on Defendants' representations about the safety and reliability of the Class Vehicles, and were not aware of the concealed material facts. Therefore, Plaintiff and putative class members purchased or leased the Class Vehicles.

219. As a direct and proximate result of the foregoing, Plaintiff and putative class members were damaged because, had Defendants disclosed the material facts regarding the Unintended Acceleration defect to Plaintiff and putative class members, they would not have purchased or leased the Class Vehicles.

220. Defendants' acted maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and well-being. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## NINTH CAUSE OF ACTION
## INTENTIONAL MISREPRESENTATION

*(Nationwide Class)*

221. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

222. Plaintiff brings this cause of action on behalf of herself and on behalf of National Class, including all subclasses.

223. Defendants intentionally represented that they were selling Honda Fit and HR-V vehicles with safe Drive-by-Wire systems that increased fuel economy, safety and drivability to Plaintiff and putative class members.

224. Defendants knew that the Honda Fit and HR-V vehicles lacked safe Drive-by-Wire systems.

225. Defendants made the representation to Plaintiff and putative class members with an intent to induce Plaintiff and putative class members to purchase Honda Fit and HR-V vehicles.

226. Defendants' representation was material, because it related to the safety, drivability, and fuel economy of Class Vehicles and because reasonable consumers are likely to be influenced by the safety, fuel economy, and drivability of said vehicles.

227. Plaintiff and putative class members reasonably and justifiably relied on Defendants' representation regarding the Honda Fit and HR-V vehicles.

228. In reliance on Defendants' representation, Plaintiff and putative class members purchased the Class Products.

229. As a direct and proximate result of the foregoing, Plaintiff and putative class members were damaged because they would not have purchased the Honda Fit or HR-V

-45-

vehicles had they known that Defendants' representations were false.

## TENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

*(Nationwide Class)*

230.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

231.   Plaintiff brings this cause of action on behalf of herself and on behalf of National Class, including all subclasses.

232.   Defendants represented that they were selling Honda Fit and HR-V vehicles with safe Drive-by-Wire systems that improved fuel economy, safety and drivability to Plaintiff and putative class members.

233.   Defendants had no reasonable grounds to believe that the Class Products contained safe Drive-by-Wire systems that did not suffer from the Unintended Acceleration defect.

234.   Defendants intended for Plaintiff and putative class members to rely on their representations about their products.

235.   Defendants' representation was material, because it related to vehicles' safety and because reasonable consumers are likely to be influenced by safety in deciding whether to purchase these products.

236.   Plaintiff and putative class members reasonably and justifiably relied on Defendants' representation regarding the Honda Fit and HR-V vehicles.

237.   In reliance on Defendants' representation, Plaintiff and putative class members purchased the Class Products.

238.   As a direct and proximate result of the foregoing, Plaintiff and putative class members were damaged because they would not have purchased the Class Products had they known Defendants' representations were false.

**ELEVENTH CAUSE OF ACTION**

**QUASI CONTRACT/RESTITUTION**

*(Nationwide Class)*

239.   Plaintiff re-alleges and incorporate by reference as fully set forth herein all paragraphs of Class Action Complaint.

240.   Plaintiff brings this cause of action on behalf of herself and on behalf of National Class, including all classes.

241.   Defendants intentionally and recklessly made misrepresentations and concealed facts about the Class Vehicles to Plaintiff and the putative class members with an intent to induce them to purchase the Class Vehicles.

242.   In reliance on Defendants' misrepresentations and concealment, Plaintiff and the putative class members, believed that Class Vehicles contained a safe regenerative Drive-by-Wire system.

243.   Plaintiffs and the putative class members made monetary payments to Defendant Honda to purchase the Class Vehicles.

244.   Defendants were unjustly enriched by any payments Plaintiff and the putative class members made to Defendants that resulted from the misrepresentations and concealment.

245.   Therefore, Plaintiff and the putative class members are entitled to restitution based on the quasi contract between Plaintiffs and the putative class members and Defendants, and each of them.

**PRAYER**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

    a.    An order certifying the Class, sub-classes and appointing Plaintiff and her counsel to represent the Class and sub-Classes;

    b.    For actual damages;

c. For statutory damages in an amount of not less than $1,000 per Plaintiff or Class member pursuant to California Civil Code § 1780(a)(1);

d. For restitution, as appropriate;

e. For statutory pre-judgment interest;

f. For any additional and consequential damages suffered by Plaintiff and the Class;

g. For reasonable attorneys' fees and the costs of this action;

h. For an order enjoining Defendants from selling defective Honda Fit and HR-V vehicles;

i. For an order enjoining Defendants from making false representations about Honda Fit and HR-V vehicles;

j. For declaratory and/or equitable relief under the causes of action stated here; and

k. For such other relief as this Court may deem just and proper.

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for herself and the Class on all claims so triable.

Dated:  May 21, 2018                    THE MARGARIAN LAW FIRM


                              By:    /s/ Hovanes Margarian, Esq.

                                     Hovanes Margarian (SBN 246359)
                                     hovanes@margarianlaw.com
                                     801 North Brand Boulevard, Suite 210
                                     Glendale, California 91203
                                     Telephone Number: (818) 553-1000
                                     Facsimile Number: (818) 553-1005




Dated:  May 21, 2018                    HORNSTEIN LAW


                              By:    /s/ Val D. Hornstein, Esq.

                                     Val D. Hornstein (SBN 133726)
                                     Val@HornsteinLaw.com
                                     275 Battery St., Suite 1600
                                     San Francisco, CA 94111
                                     Telephone Number: (415) 454-1490
                                     Facsimile Number: (415) 520-0414

                                     Attorneys for Plaintiff
                                     Katherine Weinkam
                                     and those similarly situated.

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.

1

**DECLARATION OF KATHERINE WEINKAM PER CIVIL CODE § 1780(c)**

2

I, Katherine Weinkam, declare as follows:

3

    1.    I am the Plaintiff in this action. I have personal knowledge of the matters set

4

forth below and if called upon as a witness could and would competently testify thereto.

5

    2.    I am informed and believe that venue is proper in this court pursuant to Civil

6

Code § 1780(c) based on the foregoing:

7

    a.    Defendant AMERICA HONDA MOTOR CO., INC. does business in the

8

City and County of San Francisco, CA.

9

    b.    The transaction complained of herein occurred in the City and County of

10

San Francisco, CA and within the Northern Judicial District of California.

11

    WHEREFORE, I declare under the penalty of perjury under the laws of the United

12

States and the State of California that the foregoing is true and correct, and that this

13

Declaration was executed this 18th day of May, 2018, at San Francisco, California.

14

15

*K. a. Weinkam*

16

Katherine Weinkam

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
KATHERINE A. WEINKAM v. AMERICAN HONDA MOTOR CO., INC., ET AL.